**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **POLYONE CORPORATION,** | ) | Case No. 5:08 CV 1425 |
| | ) | |
| Plaintiff, | ) | Judge Dan Aaron Polster |
| | ) | |
| vs. | ) | **MEMORANDUM OF OPINION** |
| | ) | and |
| **NAT'L UNION FIRE INS. CO.** | ) | **ORDER OF REMAND** |
| **OF PITTSBURGH, PA., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the Court is Plaintiff PolyOne Corporation's Motion to Remand for Lack of Subject Matter Jurisdiction ("Motion to Remand") . (**ECF No. 5**.) Also pending is the Motion for Leave to File Amended Notice of Removal ("Motion for Leave"). (**ECF No. 9**.) For the following reasons, the Motion to Remand is **GRANTED**, and the Motion for Leave is **DENIED AS MOOT**.

### I. Background

#### A. Underlying Tort Case

On July 7, 2005, Mansfield Plumbing Products, LLC ("Mansfield Plumbing"), a manufacturer of toilets for use in residential, commercial and institutional markets, filed an action against Plaintiff PolyOne Corporation ("PolyOne") in the Cuyahoga County, Ohio Court of Common Pleas under Case No. CV05566847. (ECF No. 1 ("Notice of Removal"), Ex. B.) (The Court will hereafter refer to this case as the "Underlying Tort Case.") The complaint

alleges that Mansfield Plumbing manufactures a polyvinyl chloride hush tube component for its toilets using a resin product ("Geon 210") manufactured and sold to Mansfield Plumbing by PolyOne. (Id. ¶ 3.) Beginning in August 2002, Mansfield Plumbing started receiving notice from its customers of cracking in the hush tube components that were manufactured using Geon 210. (Id. ¶ 6.) Mansfield Plumbing notified PolyOne of the situation. After undertaking an investigation, PolyOne advised Mansfield Plumbing that the Geon 12 was not defective and that it was safe for Mansfield Plumbing's continued use in manufacturing hush tubes. (Id. ¶ 7.) In response, Mansfield Plumbing filed the state court complaint alleging eight state law claims, the sum of which assert that the Geon 12 PolyOne manufactured and sold to Mansfield Plumbing was defective, that it was not formulated for its intended application, and that it was the cause of the hush tube failures.[1] (Id. ¶ 8.) Mansfield Plumbing also asserts that it has incurred, and will continue to incur, significant expenses in defending itself against consumer claims and in reimbursing claimants for property damage losses. (Id. ¶ 10.)

### B. Insurance Coverage Case

On May 13, 2008, Polyone filed the instant complaint against Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National") in the Summit County, Ohio Court of Common Pleas under Case No. 2008-05-3680. (Notice of Removal, Ex. A.) The complaint alleges that PolyOne was insured under a policy issued to its predecessor, M.A. Hanna Company, Policy No. BE 357-01-25, for the period from September 1, 1997 to September 1, 2002, which period was extended by endorsement to September 1, 2004 (the "National Policy").

---

[1] Specifically, Mansfield Plumbing alleges the following claims against PolyOne: negligence, strict product liability, breach of warranty of merchantability, breach of warranty of fitness for a particular purpose, express indemnification, implied indemnification, declaratory relief and contribution.

(Id. ¶ 7.) The National Policy requires National to indemnify PolyOne for all "those sums in excess of the Retained Limit" that PolyOne is "legally obligated to pay by reason of liability imposed by law . . . because of . . . Property damage . . . caused by an Occurrence . . . " (Id. ¶ 11.) The National Policy also requires National to defend suits against PolyOne seeking damages covered by the policy, "even if such suit is groundless, false or fraudulent." (Id. ¶ 12.) PolyOne seeks a declaratory judgment that National has the obligation to defend and indemnify PolyOne in the underlying Mansfield Plumbing litigation, along with claims for breach of contract and breach of the duty of good faith and fair dealing that are premised upon their declaratory judgment claims. (Id. ¶¶ 20-37.)

While the state declaratory judgment case was pending, National and American Home Assurance Company ("American") filed a declaratory judgment action against PolyOne and Liberty Mutual Fire Insurance Company ("Liberty") in the United States District Court for the Southern District of Ohio.[2] (Notice of Removal ¶ 2.) There, National and American sought a declaration of the rights and obligations of the parties with respect to the application of umbrella coverage for the Underlying Tort Case.

Meanwhile, on June 3, 2008, PolyOne filed an amended complaint in this case adding American, Liberty and Mansfield Plumbing as defendants and seeking a declaration of the rights and obligations owed to PolyOne under primary and umbrella insurance policies with respect to the Underlying Tort Case. (Id. ¶ 3.)

---

[2]This second declaratory judgment action is entitled *National Union Fire Ins. Co. of Pittsburgh, Pa., et al. v. Liberty Mutual Fire Ins. Co., et al*. under Case No. 2:08 CV 527.

On June 12, 2008, Defendants National and American, without the consent of Defendants Liberty or Mansfield Plumbing, removed the case to this district court on the basis of diversity jurisdiction – despite the fact that PolyOne and Mansfield Plumbing are both citizens of Ohio.  The "Removing Defendants" (National and American) asserted that they did not need the consent of Liberty because, "upon information and belief," Liberty had not been served.  (Notice of Removal ¶ 16.)  The Removing Defendants claimed that Mansfield Plumbing must be disregarded for purposes of diversity jurisdiction because it was a nominal party that had been fraudulently joined.  (Id. ¶¶ 10-14.)  The Removing Defendants asserted that Mansfield Plumbing was fraudulently joined because it had no interest or control over the subject matter of this litigation; Mansfield Plumbing had no genuine legal interest in the outcome of the litigation because it was not alleged to be a party in privity to the subject insurance policies; and PolyOne had not asserted a cause of action against Mansfield Plumbing.  (Id. ¶¶ 10-12.)  Presumably, the Removing Defendants did not bother to obtain the consent of Mansfield Plumbing before removing the case because of their position that Mansfield Plumbing is a "nominal party."

On June 25, 2008, PolyOne filed the pending Motion to Remand, arguing that removal was improper because Mansfield was not fraudulently joined, the parties are not diverse and the Removing Defendants failed to comply with the unanimity rule and obtain the consent of all named and properly served Defendants (i.e., Liberty and Mansfield Plumbing) prior to removal.  (Motion, at 1.)

On July 2, 2008, the Removing Defendants filed a Motion for Leave to File an Amended Notice of Removal.  (ECF No. 9.)  Therein, the Removing Defendants noted that, after having reviewed the Motion to Remand, they identified an additional, alternative ground to

support diversity jurisdiction. (Id. ¶ 4.) That is, to the extent Mansfield Plumbing was not determined to be a fraudulently joined nominal party, it must be realigned as a party plaintiff because its interests were coterminous with PolyOne's interests. (Id.) Then, diversity of citizenship would be complete.

The Court has reviewed the motions, the briefs and the record, and is prepared to issued its ruling.

**II.**

**A.**

When a case is removed to federal court based on diversity jurisdiction, all defendants who have been properly served, or who are otherwise properly joined in a lawsuit, must either join in removal or file a written consent to removal. *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir. 1999); *Harper v. Auto Alliance Int'l, Inc.*, 392 F.3d 195, 201 (6th Cir. 2004). For purposes of assessing whether a defendant was properly served, the Court must determine whether service was proper under the Ohio Rules of Civil Procedure. *Usatorres v. Marina Mercante Nicaraguenses, S.A.,* 768 F.2d 1285, 1286 (11th Cir. 1985).

Pursuant to Ohio R. Civ. P. 4.3(B)(1), service of an out-of-state defendant may be made by certified mail as long as it is "[e]videnced by return receipt signed by any person., . . ." Service by this method does not require actual service upon the defendant, "but is effective <u>upon certified delivery</u>." *Stonehenge Condominium Ass'n v. Davis*, 2005-Ohio-4683 ¶ 14, 2005 WL 2133680, at *2 (Ohio App. 10 Dist. 2005) (citing *Mitchell v. Mitchell*, 64 Ohio St.2d 49, 51 (1980), in turn citing *Castellano v. Kosydar*, 42 Ohio St.2d 107, 110 (1975)) (emphasis added).

A returned receipt signed by any person is "evidence of delivery." *Id*. The Ohio Civil Rules do not, however, bar the introduction of other evidence to establish certified delivery. *Id*.

Where the record shows that the plaintiff and the clerk of court have complied with the Ohio Civil Rules when certified mail was sent, a presumption that service was proper arises. *Sokol v. Spigiel*, 2006-Ohio-4408, 2006 WL 2466554 (Ohio App. 9 Dist. 2006); *N. Shore Auto Financing, Inc. v. Valentine*, 2008-Ohio-4611, 2008 WL 4183327 (Ohio App. 8 Dist. 2008). That presumption may be rebutted, however, by sufficient evidence showing otherwise. *Id*. (citing *Rafalski v. Oates*, 17 Ohio App.3d 65, 66 (1984), in turn citing *Grant v. Ivy*, 60 Ohio App.2d 40 (1980)).

The Removing Defendants argue that they did not need to obtain the consent of Defendant Liberty because "upon information and belief" Liberty had not been properly served at the time of removal. The Court disagrees.

It is undisputed that PolyOne followed the Civil Rules and the Clerk of Court properly sent a copy of the summons and complaint to Liberty via certified mail on June 4, 2008. (ECF No. 14-2 at 1.) It is also undisputed that a person named "B. Buttaro" received a copy of the summons and complaint at the office of Liberty in Boston, Massachusetts on June 10, 2008 – although he did not sign his name in cursive on the receipt. (Id. at 2.) The record shows that, while the matter was pending in the Summit County Common Pleas Court, lawyers for Liberty and PolyOne agreed to an extension of time to July 29, 2008 for Liberty to file an answer. (ECF No. 17, at 1.) Furthermore, Liberty filed an answer on July 28, 2008 that asserts forty-two (42) affirmative defenses – none of which challenge PolyOne's service of the summons and complaint. (ECF No. 19.) Based on the evidence, the Court finds that Liberty was served on

June 10, 2008, two days before National and American removed the case. Accordingly, the Court concludes that removal was defective and the case must be remanded.

The Removing Defendants argue that service upon Liberty was not proper because B. Buttaro did not sign his name in cursive on the return receipt. However, the cases they cite to support this position do not do so at all. (See ECF No. 10 at 16 (citing *In Re Estate of Riley*, 165 Ohio App.3d 471, 478, 847 N.E.2d 22, 27 (2006) ("A signed return receipt constitutes evidence of delivery pursuant to Civ.R. 4.1(A), but the rule does not bar introduction of other evidence to establish certified mail delivery.") and *Tripodi v. Liquor Control Comm'n*, 21 Ohio App.2d 110, 112, 255 N.E.2d 294, 296 (1970) (holding that a signed receipt constitutes "prima facie evidence" of the fact that delivery was effected).) *See also Stonehenge*, 2005-Ohio-4683 ¶ 14, 2005 WL 2133680, at *2 (holding that, while a return receipt is evidence of delivery, the Civil Rules do not bar other evidence to establish delivery).

The Removing Defendants also argue that service was not proper because the receipt was not docketed by the Summit County Court until June 17, 2008, five days after the case was removed. This argument lacks merit. Nothing in the Civil Rules or the case law suggests that service is not perfected until the return receipt is noted on a court's docket. The law is clear, however. Service is perfected upon certified delivery. *Stonehenge Condominium Ass'n*, 2005-Ohio-4683 ¶ 14, 2005 WL 2133680, at *2; *Mitchell*, 64 Ohio St.2d 49, 51; *Castellano*, 42 Ohio St.2d at 110. Since the evidence shows that the complaint was served on Liberty on June 10, 2008, the consent of Liberty was required prior to removal. Adding insult to this injury, the Removing Defendants filed a Motion for Leave to File an Amended Notice of

Removal without bothering to obtain Liberty's consent <u>a second time</u> after being apprised of PolyOne's position that it had properly served Liberty. (See Motion to Remand, at 13-14.)

The Removing Defendants also contend that they did not need Mansfield Plumbing's consent to remove the case because it was a nominal party fraudulently joined. The Court disagrees here as well.

The law in the State of Ohio is clear. The joinder of Mansfield Plumbing by PolyOne in this insurance coverage case was not fraudulent. It was required by statute and case law.

Ohio Revised Code Chapter 2721, the Ohio Declaratory Judgment Act, allows courts to declare the rights, status, and other legal relations of parties, and provides that such declarations have the effect of a final judgment or decree. O.R.C. § 2721.02(A). "[A]ll persons who have or claim any interest that would be affected by the declaration <u>shall be made parties</u> to the action or proceeding." § 2721.12(A) (emphasis added). Under § 2721.12(B),

> A declaratory judgment or decree that a court of record enters in an action or proceeding under this chapter between an insurer and the holder of a policy of liability insurance issued by the insurer and that resolves an issue as to whether the policy's coverage provisions extend to an injury, death, or loss to person or property that an insured under the policy allegedly tortiously caused shall be deemed to have the binding legal effect described in division (C)(2) of section 3929.06 of the Revised Code and to also have binding legal effect upon any person who seeks coverage as an assignee of the insured's rights under the policy in relation to the injury, death, or loss involved.

Id.

Ohio Revised Code § 3929.06 addresses the rights of judgment creditors of an insured tortfeasor and the binding legal effect of declaratory judgments between an insurer and its insured. Basically, §§ 3929.06(A)(2) and (B) prevent a tort claimant from directly suing a

-8-

tortfeasor's insurer until at least thirty days after it obtains a judgment against the tortfeasor and becomes a judgment creditor. However, § 3929.06(C)(2) provides:

> If, prior to the judgment creditor's commencement of the civil action against the insurer in accordance with divisions(A)(2) and (B) of this section, the holder of the policy commences a declaratory judgment action or proceeding under Chapter 2721 of the Revised Code against the insurer for a determination as to whether the policy's coverage provisions extend to the injury, death, or loss to person or property underlying the judgment creditor's judgment, and if the court involved in that action or proceeding enters a final judgment with respect to the policy's coverage or noncoverage of that injury, death, or loss, that final judgment shall be deemed to have binding legal effect upon the judgment creditor for purposes of the judgment creditor's civil action against the insurer under divisions (A)(2) and (B) of this section. This division shall apply notwithstanding any contrary common law principles of res judicata or adjunct principles of collateral estoppel.

Id.

A reading of these statutes *in pari materiae* leads one to conclude that, while a tort claimant cannot commence a direct action against the tortfeasor's insurer until it obtains a judgment against the tortfeasor, the holder of an insurance policy who files a declaratory judgment action seeking a determination as to whether the policy provides coverage to someone injured by the policyholder must add the tort claimant to the action. *Estate of Heintzelman v. Air Experts Inc.*, 2008-Ohio-4883, 2008 WL 4356286 (Ohio App. 5 Dist. 2008) ("Because both R.C. 2721.12(B) and 3929.06(C) address declaratory judgment actions involving insurance coverage, they must be read *in pari materia* and harmonized together, if possible."). *See Cincinnati Ins. Co*, 2003-Ohio-47 ¶ 17, 2003 WL 77122 at *3 (explaining that, under the amended statutes, a tort claimant cannot bring a direct action against an insurer before obtaining a judgment against the tortfeasor); *Indiana Ins. Co. v. Murphy*, 2006-Ohio-1264 ¶ 19, 165 Ohio App.3d 812, 820-21 (2006) (noting that, under the same amended statutes, a declaratory judgment is made binding on the tort claimant even if that claimant is not a party to the declaratory judgment proceeding);

-9-

*Heintzelman*, 2008-Ohio-4883, 2008 WL 4356286 (concluding the same, reading the amended statutes *in pari materiae*).

This interpretation of the statutes makes sense. Prohibiting a tort claimant from suing its tortfeasor's insurer before the claimant has obtained a favorable judgment on the underlying tort liability prevents courts from issuing advisory opinions regarding policy coverage when there may be no liability. At the same time, requiring that tort claimants be made parties to insurance coverage declaratory judgment actions protects the interest of the tort claimant in a litigation the result of which would otherwise potentially have a prejudicial and preclusive effect on that interest. This interpretation of the statutes is also supported by Ohio courts.

In *Cincinnati Ins. Co. v. Consolidated Equip. Co.*, 2003-Ohio-47, 2003 WL 77122 (Ohio App. 2 Dist. 2003) for instance, an Ohio appeals court examined the issue of whether a tort claimant and its subrogated insurer should have been dismissed from a declaratory judgment action filed against the tortfeasor by its insurer. The court conducted an exhaustive analysis of Ohio law and concluded that the trial court erred by dismissing the tort claimant and its insurer. "In view of the effect of the 1999 amendments to the Declaratory Judgment Act and § 3929.06, we believe that [the tort claimant and the subrogated property insurer] were proper parties to the declaratory judgment actions and should not have been dismissed." *Id*. ¶ 25. The court explained that, prior to the 1999 amendments to the Declaratory Judgment Act, tort claimants could bring a direct action against the tortfeasor's insurer, but that remedy was no longer available under Ohio law. *Id*. ¶ 49 (discussing *Broz v. Winland*, 68 Ohio St.3d 521, 525, (1994)). However, because of the amended Declaratory Judgment Act's preclusive effect, the

-10-

tort claimant and its subrogated insurer were properly named parties. *Id*. ¶ 25. *See also Indiana Ins. Co.*, 2006-Ohio-1264, 165 Ohio App.3d 820-21 (2006) (reversing the denial of a tort claimant's motion to intervene in a declaratory judgment insurance coverage action between the tortfeasor and its insurer because, "under the amended Declaratory Judgment Act, a declaratory judgment is made binding on the tort claimant and those interests will undoubtedly be impaired by a ruling in a declaratory action"); *State Farm Mutual Ins. Co. v. Young*, 2006 WL 2060551 (Ohio App. 9 Dist. 2006) (Ohio law recognizes that "a tort claimant's interest in the tortfeasor's insurance coverage is sufficient to permit him to intervene in a declaratory judgment action . . . "). The court also relied on the Ohio Supreme Court's holding in *Hartford Acc. & Indemn. Co. v. Randall*, 125 Ohio St. 581, 586 (1932), that a tort claimant is "a beneficiary and a real party in interest" in the tortfeasor's insurance policy.

In sum, PolyOne was required, by statute and case law, to add Mansfield Plumbing to this insurance coverage case; thus, Mansfield Plumbing was not fraudulently joined. Mansfield Plumbing has an interest in the determination of whether there is insurance coverage available to cover its tort claims against PolyOne in the Underlying Tort Case, and can advocate its position if necessary.

The Removing Defendants argue that Mansfield Plumbing is not a real party to the controversy based on *Certain Interested Underwriters At Lloyd's, London, England v. Layne*, 26 F.3d 39, 42 (6th Cir. 1994). *Layne* is distinguishable. To begin, *Layne* was not a removed case – so fraudulent joinder was not an issue. In *Layne*, underwriters of a fire insurance policy (citizens of Great Britain) brought a declaratory judgment action in federal court against the owner of the insured premises and the loss payee (both citizens of Tennessee), asking the court

to declare that the defendants conspired to burn down the premises.  The defendants counterclaimed, alleging bad faith withholding of insurance proceeds.  After trial, the jury entered judgment in favor of the underwriters.  On appeal, the defendants challenged subject matter jurisdiction.  The question on appeal was whether, for diversity of citizenship purposes, the court should consider the citizenship of the underwriters, who filed the suit, or the citizenship of its syndicate members, who did not file the suit.  The court determined that the underwriters were the real parties in interest because they wrote the insurance contract, processed the claim and were authorized to sue on the policy.  Furthermore, the court noted that, in contrast to the nonliability of the authorized agent making a contract on behalf of a disclosed principal, an insurance agent making a contract of insurance for an undisclosed principal becomes personally liable to the insured.  Under Tennessee law, a party who deals with such an agent may sue either the principal or the agent, but not both.  *Id*. at 43 (citations omitted).  Since the defendants elected to sue the underwriters, the syndicates, as principals, were no longer liable to the defendants and, consequently, were not the real parties in interest.  Here, Mansfield Plumbing is a proper party, it is a required party, and it must be joined to protect its interest in the insurance proceeds.

Additionally, *Layne* does not support the Removing Defendants' legal position.  The *Layne* court stated that a case can proceed in federal court without a nondiverse party "whenever it can be done without prejudice to the rights of others."  *Layne*, 26 F.3d 39 at 42.  Because any judgment this Court would enter on the insurance coverage issue would have a preclusive effect on Mansfield Plumbing, it could very well prejudice Mansfield Plumbing's ability to collect insurance proceeds if Mansfield were not a party to this litigation.

The Removing Defendants' also cite *MJR Int'l, Inc. v. Am. Arbitration Ass'n*, *et al.*, No. 2:06 CV 937, 2007 WL 1001250 (S.D. Ohio Apr. 11, 2007) in support of its argument that Mansfield Plumbing is not a real party to the controversy, but that case is factually distinguishable. Suffice to say that *MJR Int'l* did not involve an insurance coverage declaratory judgment action brought by an alleged tortfeasor against its insurer or the inclusion of a tortfeasor under O.R.C. §§ 2721.12 or 3929.06.[3]

Contrary to the Removing Defendants' argument, Mansfield Plumbing's interest in the declaratory judgment action is real, not derivative. Ohio courts have routinely acknowledged that a tort claimant has a genuine interest in these types of insurance coverage actions. *See, e.g., Indiana Ins. Co.*, 2006-Ohio-1264 ¶ 13, 165 Ohio App.3d at 819 (holding that a tort claimant has a "direct interest" in a declaratory judgment action to determine whether the tortfeasor's policy covers the alleged tort); *Broz*, 68 Ohio St.3d at 525 (holding that a declaratory judgment action between an alleged tortfeasor and its insurer over the extent of coverage available involved the tort claimant's interests "as much as any other party who participated in that proceeding") (superseded by statute on other grounds); *St. Paul Fire & Marine Ins. Co. v.*

---

[3]In *MJR Int'l*, defendant Victoria's Collection had initiated an arbitration proceeding against MJR Int'l before defendant American Arbitration Association ("AAA"). MJR Int'l, which insisted that it never entered into an agreement to arbitrate disputes with Victoria's Collection and the arbitration thus lacked legal authority, turned around and filed a declaratory judgment action in state court against Victoria's Collection and the AAA. Therein, MJR Int'l sought a court order enjoining the arbitration and prohibiting Victoria's Collection from instituting arbitration proceedings against it in any other forum. Without the consent of the AAA, Victoria's Collection removed the action to federal court based on diversity jurisdiction. MJR Int'l filed a motion to remand arguing, *inter alia*, that the removal was procedurally defective because the AAA did not join in it. Victoria's Collection argued that the court could disregard AAA for removal purposes since it was merely a nominal party, not a real party in interest. The court agreed, noting that there were decisions specifically holding that the AAA or any other body that conducts arbitrations may be treated as a nominal party for removal purposes, and that the AAA clearly had no interest in the subject matter of the action. The AAA is a far cry from Mansfield Plumbing, which must be included in the present action to protect its interest in the insurance proceeds.

*Dept. of Natural Resources*, 25 Ohio Misc. 26 (1970) (holding that a tort claimant has an interest which will be affected by the decision in an insurance coverage declaratory judgment action). Neither of the cases cited by the Removing Defendants in support of their contention that Mansfield Plumbing's interest is derivative, i.e., *Rose v. Giamatti*, 712 F.Supp.906 (S.D. Ohio 1989) or *Local Union No. 172 v. P.J. Dick, Inc.*, 253 F.Supp.2d 1022 (S.D. Ohio 2003), involves the relevant amended Ohio statutes.

In short, Mansfield Plumbing was added under the Ohio Declaratory Judgment Act as a party. Because its joinder was required, it was not fraudulent. As a party, Mansfield Plumbing may actively participate in the case, advocate its position on coverage, and protect its interest in the proceeds. Because it is a legitimate party, its consent was required prior to removal by the Removing Defendants. Thus, the Court concludes that removal without Mansfield Plumbing's consent was defective, providing a second basis for remand.

**B.**

The Court notes in passing that, even if removal had been defect-free, it would remand the case in any event. Assuming for the moment that the Court has diversity jurisdiction over the case (in other words, the parties were realigned so that Mansfield Plumbing would be deemed a party plaintiff), the Court would decline to exercise its discretion over the declaratory judgment action for the following reason.

Under the Ohio Declaratory Judgments Act, the court has discretion whether or not to entertain such action. O.R.C. 2721.02. Where the resolution of the dispute involved in a declaratory judgment depends on a determination of facts, the trial court in the exercise of sound judgment, may decline to exercise that discretion. *Smith v. Municipal Civil Serv. Comm'n*, 158

Ohio State 401 (1952); *see also Blackwell v. Int'l Union, U.A.W.*, 9 Ohio App.3d 179 (1983) (a complaint seeking injunctive relief grounded on a breach of contract, filed before the actual breach, must be treated as a claim for declaratory judgment).  The Ohio Declaratory Judgments Act must be interpreted to harmonize with federal laws on the subject of declaratory judgment actions.  O.R.C. 2721.04; *Malloy v. City of West Lake*, 52 Ohio State 2d 103, 109-10 (1977).

The Sixth Circuit recently issued a decision entitled *Travelers Indemnity Co. v. Bowling Green Professional Assoc., PLC*, 495 F.3d 266  (6th Cir. 2007).  There, the Sixth Circuit found that a district court abused its discretion when it decided to exercise jurisdiction over a federal declaratory judgment action brought by an insurer to determine the issue of coverage in an underlying state court action.  In reviewing the *Grand Trunk* factors, the *Travelers* court determined, among other things, that issues of insurance contract interpretation are questions of state law with which state courts "are more familiar and, therefore, better able to resolve."  495 F.3d at 273 (*quoting Bituminous Cas. Corp. V. J & L Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir. 2004)).  The court also determined that there were alternative remedies that were better than a federal declaratory judgment action for resolving the insurance coverage issues, i.e., a state declaratory judgment action, or an indemnity action at the conclusion of the underlying state action.

The Court understands that *Travelers* does not create a *per se* rule precluding the district court from exercising jurisdiction over all federal declaratory judgment cases involving insurance coverage.  However, *Travelers* makes clear that the exercise of federal jurisdiction over such cases is strongly disfavored.

If the case were properly removed, the Court would decline to exercise jurisdiction over this case for many of the reasons set forth in *Travelers*. Primary among those reasons is that the Underlying Tort Case is presently being litigated in state court, the resolution of this case depends on the resolution of facts in that case, and all the claims in this case involve matters of state insurance law best resolved by a state court.

### III.

Based on the foregoing, the Court hereby **GRANTS** the Motion to Remand (**ECF No. 5**) is **GRANTED**. The Motion for Leave to File Amended Notice of Removal (**ECF No. 9**) is **DENIED AS MOOT**.

The Clerk of Court is directed to **REMAND** this case to the state court from which it was removed.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster    October 14, 2008*
**Dan Aaron Polster**
**United States District Judge**